UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1 ELSAYED KAZEM SAFIEDINE a/k/a "Tom",

D-2 MARY FAWAZ,

    Defendants.
                                    /

Case No. 08-20148

Honorable Patrick J. Duggan

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 19, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

After a jury trial held during September 2011, Defendants Elsayed Kazem Safiedine and Mary Fawaz were each convicted of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Defendants each filed a motion for a judgment of acquittal, or in the alternative, for a new trial, and the Court denied these motions in an Opinion and Order dated June 7, 2012. Presently before the Court is Defendant Fawaz's motion for reconsideration of this order, filed on June 21, 2012. Defendant Safiedine has joined in this motion. For reasons set forth below, the motion is denied.

The Court grants a motion for reconsideration only if the movant demonstrates that

the Court and the parties have been misled by a palpable defect and that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). A "palpable defect" is one that is "obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). The purpose of a motion for reconsideration is not "'to give an unhappy litigant one additional chance to sway the judge.'" *Pakideh v. Ahadi*, 99 F. Supp. 2d 805, 809 (E.D. Mich. 2000) (quoting *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977)).

In her motion for reconsideration, Fawaz argues that the government's case is based on her participation in legitimate business transactions at her employer's request. Fawaz notes that it is not illegal to satisfy financial obligations by negotiating checks to third parties and asserts that this practice is common in the industry. Defendant Safiedine raised this argument in his motion for a new trial. In addressing this argument, the Court noted that "'an overt act in furtherance of a conspiracy need not be illegal itself.'" 6/7/12 Op. & Order at 11 (quoting *United States v. Jerkins*, 871 F.2d 598, 602-03 (6th Cir. 1989)). The Court concluded that even the legitimate negotiation of checks could satisfy the overt act element of conspiracy if it advanced a conspiracy to conceal income from the IRS. *Id.* The evidence presented by the government was sufficient to infer such a purpose. It is undisputed that checks issued by Sunoco, Inc. ("Sunoco") to JSC Corporation ("JSC") were negotiated to Mansour Kassabri, a contractor who had performed services for JSC. Kassabri testified that both Fawaz and Safiedine asked him to deposit the Sunoco checks

into his business's bank account and then write certain checks to third parties. *See* Trial Tr. vol. 2, 56-58. Allan Cohen, the accountant who prepared JSC's tax returns, testified that he was unaware of these Sunoco checks because the checks were never deposited into JSC's bank account, and he obtained his figures from JSC's bank statements. Trial Tr. vol. 3, 85-88. Cohen further testified that he met with Fawaz and Safiedine annually to discuss any necessary adjustments to these figures. Trial Tr. vol. 3, 90-92. The jury could have concluded that given Safiedine and Fawaz's roles at JSC and their interactions with Cohen, they were aware of the process Cohen used to obtain information for JSC's tax returns. The jury therefore could have concluded that the Sunoco checks were negotiated to third parties in order to conceal the receipt of funds from the Internal Revenue Service ("IRS"). This would satisfy the overt act element of conspiracy, even though the negotiation of a check to a third party is not illegal.

    Fawaz also argues that her participation in the real estate closing for the sale of a gas station was not illegal. She notes that she did not sign the document presented by the government showing a sale price of $700,000. Yet the government introduced testimony indicating that several months after the sale, Fawaz and Safiedine asked the buyer, Ali Awada, to falsify the price and instructed Awada to tell the government that part of the purchase price was used to pay for new fuel pumps. Trial Tr. vol. 1, 49-53. Awada also testified that during a meeting, Fawaz asked him to agree that the purchase price was $700,000, while indicating that their conversation was being overheard by another person. Trial Tr. vol. 1, 53. This evidence suggests that Fawaz and Safiedine shared a common plan to understate the sale price of the gas station. Fawaz's asking Awada to understate

3

the sale price satisfies the overt act element of conspiracy and also establishes her voluntary participation in the plan. Because the $700,000 sale price was subsequently reported to the IRS, the jury could reasonably infer that one purpose of the conspiracy was to conceal income from taxing authorities.

Fawaz argues that to the extent a conspiracy was proven, its purpose was to deceive Safiedine's business partner, and the obstruction of tax collection by the IRS was merely a collateral effect. It is true that a *Klein* conspiracy[1] does not lie where "'impeding the IRS is only a collateral effect of an agreement, rather than one of its purposes.'" *Adkinson*, 158 F.3d at 1155 (11th Cir. 1998). Put differently, "the tax purpose must be the *object* of a *Klein* conspiracy, and not merely a foreseeable consequence of some other conspiratorial scheme." *Id.* (citing *Dennis v. United States*, 384 U.S. 855, 861, 86 S. Ct. 1840, 1844 (1966)) (emphasis in original). "On the other hand, a conspiracy may have multiple objectives, and 'if one of its objectives, even a minor one, be the evasion of federal taxes, the offense is made out, though the primary objective may be concealment of another crime.'" *Id.* (quoting *Ingram v. United States*, 360 U.S. 672, 679-80, 79 S. Ct. 1314, 1320 (1959)). *Adkinson* provides an example clarifying the distinction between a multiple-objective conspiracy and a conspiracy that has the collateral effect of impeding tax collection. The court indicated that "the robbery of a bank by two or more persons who subsequently fail to report this income on their tax returns" should not be considered a tax

---

[1] A *Klein* conspiracy is "[a] Section 371 conspiracy where the victim is the IRS and the objective is to defeat its lawful functioning." *United States v. Adkinson*, 158 F.3d 1147, 1154 (11th Cir. 1998) (citing *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957)).

4

conspiracy. *Id.* at 1155 n.17.

The Court believes that the government presented evidence sufficient to infer that impeding tax collection was an object of the alleged conspiracy rather than a collateral effect. Awada testified that Safiedine asked him to sign a document understating the sale price of the gas station so that Safiedine could show the document to his partner. Trial Tr. vol. 1, 49. However, he also testified that Fawaz asked him to lie to the government about the purchase price if he was contacted by investigators. Trial Tr. vol. 1, 53. This suggests that Safiedine's partner was not the only intended target of the deception. The obvious purpose for understating the sale price was to conceal the true amount of the gain derived from the sale. The understatement of income is not the consequence of some other misconduct; it is the heart of the charged conspiracy. The government presented evidence from which the jury could conclude that Defendants' deception served dual purposes, allowing Safiedine to defraud both his partner and the IRS. So long as one purpose of the scheme was to impede tax collection, Defendants may be convicted of a *Klein* conspiracy.

Fawaz also argues that Cohen did not obtain information from her in compiling tax returns for MTK and KLC, the partnership which sold the gas station to Awada. Fawaz contends that this indicates that she lacked the intent to participate in a conspiracy to impede tax collection. The government was not required to prove that Fawaz was the source of the information reported on the tax returns. The government instead presented evidence that Fawaz attempted to secure Awada's cooperation in concealing the true sale price from both Safiedine's partner and the government. This evidence was sufficient to establish Fawaz's participation in a conspiracy to impede taxing authorities. A conspiracy

5

defendant "'need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement.'" *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986) (quoting *United States v. Cuni*, 689 F.2d 1353, 1356 (11th Cir. 1982)).

Fawaz argues that the government has failed to produce evidence of conversations or meetings between Fawaz and Safiedine in which a scheme to avoid taxes was discussed. "'Proof of a formal agreement is unnecessary." *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). "'A tacit or material understanding among the parties to a conspiracy is sufficient to establish the agreement, and conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan.'" *United States v. Blackwell*, 459 F.3d 739, 760 (6th Cir. 2006) (quoting *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002)). Thus, it was unnecessary to show that Fawaz and Safiedine actually discussed the alleged scheme. The Court believes that the evidence presented was sufficient to infer participation in a common plan to impede tax collection. *See* 6/7/12 Op. & Order at 4-7.

Fawaz next contends that the government's case was based on "inconsistent, vague statements of a less than credible witness." Def.'s Br. 6. Presumably, this refers to Mr. Awada. For purposes of Defendants' motions for judgment of acquittal, the Court is not permitted to "'re-evaluate the credibility of witnesses.'" *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). The Court is, however, permitted to consider witnesses' credibility in the context of a motion for new trial. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998) (citing

*United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988)). In its Opinion and Order, the Court noted that Defendants raised a number of challenges to Mr. Awada's credibility. *See* 6/7/12 Op. & Order at 11-12. Yet the Court also observed that the government did not use Awada's testimony to establish the scheme of understating income via the negotiation of Sunoco checks to third parties. The Court therefore concluded that the jury could have found Defendants guilty of conspiracy even if it disregarded Awada's testimony. For this reason, Awada's credibility does not provide sufficient grounds for granting a new trial.

The Court has carefully considered each of the arguments raised in the motion for reconsideration, but finds no palpable defect in its conclusions.

Accordingly,

**IT IS ORDERED** that Defendants' motion for reconsideration is **DENIED**.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:  
Ben Gonek, Esq.  
James C. Thomas, Esq.  
Tiwana L. Wright, Esq.  
Mark W. Kotila, Esq.