UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

       Plaintiff,

v.

D-1 ELSAYED KAZEM SAFIEDINE
a/k/a "Tom",

D-2 MARY FAWAZ,

       Defendants.
_____/

Case No.: 08-20148
Hon. Patrick J. Duggan

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR BOND PENDING APPEAL

After a jury trial held during September 2011, Defendants Elsayed Kazem Safiedine and Mary Fawaz were each convicted of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. After ruling on several post-trial motions, the Court sentenced the Defendants on October 17, 2012. Defendants have each moved to remain on bond pending resolution of their appeals of their conviction and sentence and it is on these motions which the Court is issuing a ruling today. The positions of the parties have been fully briefed. After careful consideration, the Court finds that both motions must be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The indictment in this case alleged that Defendants conspired to obstruct and impede the assessment and collection of income taxes by the Internal Revenue Service

("IRS"). Defendant Safiedine exercised at least partial control over several business entities, including JSC Corporation ("JSC"), a Michigan partnership named MTK & KLC, and MTK Family Investments ("MTK"). These entities owned and operated gas stations in metropolitan Detroit. Defendant Fawaz worked for Defendant Safiedine.

At trial, the Government introduced testimony indicating that JSC's taxable income was understated in tax returns filed with the IRS as a result of Defendants' concealment of certain checks issued to JSC by Sunoco, Inc. ("Sunoco"). Witnesses also testified that Defendants' actions in connection with the sale of a gas station led to the understatement of taxable income in MTK & KLC's tax returns. By misrepresenting and concealing this taxable income Defendants caused false income tax returns to be filed by JSC and MTK & KLC.

At the conclusion of the Government's case-in-chief, Defendants each reserved the right to move for a judgment of acquittal. Defendants did not call any witnesses and rested their case. The jury subsequently found Defendants Safiedine and Fawaz guilty of conspiracy to defraud the United States. (Verdict Form, ECF No. 51.) After the jury rendered its verdict, the Court took Defendants' motions for a judgment of acquittal under advisement and permitted Defendants to remain free on bond. On June 7, 2012, the Court denied Defendants' motions for a judgment of acquittal, or in the alternative, their motions for a new trial. (June 7, 2012 Op. & Order, ECF No. 71.) In rendering this decision, the Court determined (1) that the Government presented sufficient evidence to

2

sustain a conviction[1] and (2) that the jury's verdict was not against the manifest weight of the evidence.[2] (*Id.* at 12.) Defendants then filed a motion for reconsideration, which this Court denied on July 19, 2012. (July 19, 2012 Op. & Order, ECF No. 77.)

Upon denying aforementioned post-trial motions, the case proceeded to sentencing. The parties filed sentencing memoranda and the Court held a sentencing hearing on October 17, 2012. The Court determined that the tax loss attributable to Defendants' conduct was $193,200 and that the corresponding advisory guideline range was 21-27 months. (Sent'g Hrg. Tr. 118:19-15, ECF No. 81.) The Court considered the 18 U.S.C. § 3553(a) factors and thereafter sentenced Defendant Safiedine to twenty-one months of imprisonment (Def. Safiedine J. 2, ECF No. 79) and Defendant Fawaz to twelve months and one day of imprisonment (Def. Fawaz J. 2, ECF No. 80). In addition to the term of imprisonment, the Court sentenced Defendants to two years of supervised release and ordered restitution, although, the Court deferred ruling on the amount until the IRS determined the actual amount of tax loss incurred by the United States. (Def. Safiedine J. 3, 5; Def. Fawaz J. 3, 5.)

## II. GOVERNING STANDARD

Pursuant to the Bail Reform Act of 1984, a defendant found guilty and sentenced to a term of imprisonment may be released on bond pending appeal if the trial court finds

---

[1] The Court made this determination in the context of Defendants' motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). (Op. & Order 9.)
[2] The Court determined that Defendants had not discharged their burden of demonstrating that "the interest of justice" required the Court to "vacate [] judgment and grant a new trial[.]" Fed. R. Crim. P. 33(a); (Op. & Order 12.).

3

that the defendant has satisfied the criteria delineated in 18 U.S.C. § 3143(b)(1). The statute provides, in pertinent part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal[,] . . . be detained, unless the judicial officer finds - -
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and
> (B) that the appeal is not taken for the purpose of delay and raises a substantial question of law or fact likely to result in - -
>   (i) reversal,
>   (ii) an order for a new trial,
>   (iii) a sentence that does not include a term of imprisonment, or
>   (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). The statute creates a presumption against release pending appeal. *United States v. Vance*, 851 F.2d 166, 169-70 (6th Cir. 1988). In overcoming this presumption, the burden of proof rests with the defendant. *Id.* (citing *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985)).

### III. ANALYSIS

Applying the standard above to Defendants' motions for bond pending appeal reveals that neither Defendant is entitled to the relief they seek.

### A. Risk of Flight or Danger to Others

The Government does not seriously claim that Defendants are likely to flee or that they pose a danger to the safety of other persons or to the community. By all indications,

Defendants have complied with the conditions governing their pretrial release. In addition, the Court has twice permitted Defendant Fawaz to travel outside of the county, although both instances occurred before Defendants trial. (Mar. 5, 2009 Stip. & Order Allowing Travel, ECF No. 18; July 16, 2009 Stip. & Order Allowing Travel, ECF No. 21.) Lastly, the fact that neither Defendant has yet to be incarcerated supports the inference that the Court previously determined that neither posed a risk of flight or a danger to others or the community. Consequently, the sole issue to be determined is whether Defendants' motions raise a substantial issue for purposes of permitting them to remain on bond pending resolution in the Sixth Circuit.

**B.     Substantial Question of Law or Fact**

To determine if an appeal raises a substantial question of law or fact, the Sixth Circuit applies the two-part test initially devised by the Eighth Circuit in *United States v. Powell*, 761 F.2d 1227 (8th Cir. 1985) (en banc). *Pollard*, 778 F.2d at 1182. A court first determines whether the question is "substantial" in the sense that it constitutes a "close question or one that could go either way." *Id.*; *see also United States v. Mikell*, No. 97-81493, 2007 U.S. Dist. LEXIS 4233, at *6 (E.D. Mich. Jan. 22, 2007) (Cleland, J.) ("Courts have also held that a substantial question is 'either a novel question, one that has not been decided by controlling precedent, or one which is fairly doubtful.'"). If the reviewing court finds that the question is "substantial," it must then assess whether the question "is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182.

Defendants argue that the Court ignored a more accurate assessment of the tax loss caused by their conduct which in turn caused the Court to incorrectly calculate the guidelines range. In addition, Defendants argue that the evidence presented at the sentencing hearing demonstrates that the verdict was against the weight of the evidence and that an order for a new trial is likely to result on appeal. The Court addresses these arguments in turn.

**A.     Tax Loss and the Guidelines Range**

Defendants argue that the Court incorrectly calculated the guidelines range due to its purported failure to accurately determine the amount of tax loss. This, according to Defendants, constitutes procedural unreasonableness "requir[ing] reversal" or at least "resentencing." (Def. Safiedine's Br. in Supp. 13 ("Procedural reasonableness requires proper calculation of the guideline range." (citing *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007) and *United States v. Conaster*, 514 F.3d 508, 519-20 (6th Cir. 2008)).)

*1.     Determining Tax Loss*

The pertinent guideline in the instant case is § 2T1.9, entitled "Conspiracy to Impede, Impair, Obstruct, or Defeat Tax." U.S. Sentencing Guidelines Manual § 2T1.9 cmt. Background (2011) (noting that the guideline applies to 18 U.S.C. § 371). This guideline provides that the base offense level is the greater of the offense level from § 2T1.1 or § 2T1.4 or 10. *Id.* § 2T1.9(a). Both § 2T1.1 and § 2T1.4 indicate that the base offense level is determined by the amount of "tax loss," which is defined as "the total amount of loss that was the object of the offense (*i.e.*, the loss that would have resulted

6

had the offense been successfully completed)." *Id.* § 2T1.1(c)(1). In recognition that tax loss is not always readily ascertainable, Note (A) provides:

> If the offense involved filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income . . . plus 100% of any false credits claimed against tax, *unless a more accurate determination of the tax loss can be made*.

U.S.S.G. § 2T1.1(c)(1) note (A) (emphasis added). After assigning the appropriate amount of tax loss, a sentencing court then refers to the Tax Table in § 2T4.1 to find the appropriate base offense level.

### 2. *The Positions of the Parties at the Sentencing Hearing*

At sentencing, the Government contended that Defendants caused $271,600 in tax loss.[3] (Sent'g Hrg. Tr. 99:21-23; Gov't's Sent'g Mem., ECF No. 76.) In reaching this figure, the Government added the values of the eight Sunoco checks and determined that $845,000 in taxable income went unreported. (Gov't.'s Br. in Supp. of Sent'g. Mem. 4.) After applying the default 28% tax rate described in § 2T1.1(c)(1) note (A), the Government determined that the tax loss resulting from these unreported checks amounted to $236,000. (*Id.*) With respect to the $175,000 in unreported income from the 1999 gas station sale, the Government applied the 1999 capital gains tax rate of 20%. (*Id.*) The tax loss from this transaction amounted to $35,000. (*Id.*) The Government's tax loss valuation of $271,600 would, according to the § 2T4.1 Tax Table, have resulted

---

[3] The Presentence Reports ("PSR") estimated the tax loss at $285,600. (PSR 5.) The PSR amount differed from the Government's because the PSR taxed the $175,000 unreported profit from the gas station sale at the default tax rate of 28% instead of applying the 1999 capital gains tax rate of 20%.

7

in a base offense level of 18. The advisory guidelines range for a defendant with a criminal history level of I sentenced to a crime with a base offense level of 18 is 27-33 months.

Perhaps unsurprisingly, Defendants contested the Government's calculation and presented the testimony of their expert, a former IRS Revenue Agent named Michael Washenko, at the sentencing hearing. Mr. Washenko concluded that due to the availability of various tax deductions, Defendants' conduct resulted in a maximum tax loss of approximately $2,000. (Sent'g Hrg. Tr. 111:25.) A tax loss of this amount would result in a base offense level of 8. *See* U.S. Sentencing Guidelines Manual § 2T4.1 (Tax Table). The relevant guideline, however, requires a minimum base offense level of 10.[4] *Id.* § 2T1.9(a). Had the Court used the minimum base offense level of 10, the advisory guidelines range would have been between 6-12 months.

## 3. *The Sentence*

The Court did not blindly adopt the figures presented in the Presentence Reports or the Government's Sentencing Memorandum. Rather, the Court determined that $280,000 worth of Sunoco checks were reported, albeit by MTK instead of JSC. (Sent'g Hrg. Tr. 116:2-4.) This reduced the tax loss caused by Defendants' conduct from $271,600 to $193,200, and reduced the base offense level from 18 (and the corresponding advisory sentencing range of 27-33 months) to 16 (with an advisory sentencing range of

---

[4] In suggesting that the sentencing range for Defendant Fawaz should be 0-6 months, the Sentencing Memorandum appears to ignore the minimum offense level provided in U.S. Sentencing Guidelines Manual § 2T1.9(a). (Def. Fawaz's Sent'g Mem., ECF No. 78, at 7.)

8

21-27 months). Based on this amended figure, the Court sentenced Defendant Safiedine to 21 months in prison and Defendant Fawaz, who benefitted from a downward departure, to one year and one day in prison. The Court also ordered two years of supervised release and ordered restitution in an amount to be initially determined by the IRS and subsequently approved by the Court.

*4.     Defendants' Arguments in Support of the Present Motion*

Because § 2T1.1 instructs district courts to treat the tax loss "as equal to 28% of the unreported gross income . . . unless a more accurate determination of the tax loss can be made[,]" U.S. Sentencing Guidelines Manual § 2T1.1(c)(1) note A, Defendants contest the Court's tax loss calculation for sentencing purposes, arguing that Mr. Washenko presented a "more accurate" method. Mr. Washenko opined that the Government's tax loss was minimal because various deductions, such as those for business expenses, depreciation, and leasehold improvement amortization, were available had the income been reported properly. Defendants' argument, however, is premised on the erroneous notion that the tax loss for imposing a sentence is based on actual – as opposed to intended – tax loss.[5] (Sent'g Hrg. Tr. 95:21-22.)

---

[5] The Court notes that for purposes of determining the restitution portion of a defendant's punishment, only actual loss may be taken into account. *See United States v. Innarelli*, 524 F.3d 286, 291 n.1 (1st Cir. 2008) (citing *United States v. Swanson*, 394 F.3d 520, 527 (7th Cir. 2005)). Contrary to the suggestion in Defendant Safiedine's Brief, the Court's decision to defer entering the amount of restitution until the IRS is able calculate the amount owed does not underscore the existence of a substantial question of law or fact for purposes of remaining on bond pending appeal. (Def. Safiedine's Br. in Supp. 9-10.) The Court believes that given the different penological purposes behind imprisonment (punishment) and restitution (restoring the victim), the use of intended loss for sentencing and the use of actual loss for restitution is plainly reasonable. *Cf. Innarelli*, 524 F.3d at

9

Although the Sixth Circuit has not yet "wade[d] into [the] circuit split[6] over whether taxpayers may use 'unclaimed' deductions to reduce gross income under § 2T1.1[,]" *United States v. Harris*, 433 F. App'x 383, 387 (6th Cir. 2011) it has explained in another context "that 'tax loss' for purposes of §§ 2T1.3 and 2T1.4 is based on the amount by which the income was understated on the false tax returns and not on whether the government ultimately lost money[,]" *United States v. Tandon*, 111 F.3d 482, 490-91 (6th Cir. 1997) (rejecting defendant's argument that the district court erred in failing to reduce the tax loss by the value of "unreported deductions that [defendant] could have claimed"). This suggests that the Sixth Circuit finds merit in using intended loss as the measure of culpability for purposes of imposing a sentence. *See also United States v. Daulton*, 266 F. App'x 381, 387 (6th Cir. 2008) ("The amount of loss is based on the loss the defendant intended to inflict and not the government's actual loss.") (citing *United States v. Kraig*, 99 F.3d 1361, 1370-71 (6th Cir. 1996)).

Although § 2T1.1 does permit "a more accurate determination" of tax loss than the 28% approximation, this "might involve applying a different tax rate or incorporating exemptions and deductions legitimately claimed by the taxpayer on a tax return." *United*

---

293 (using this reasoning in a fraud case to find that "the appropriate loss amount for purposes of restitution may well be lower than the loss amount for purposes of sentencing").

[6] Defendant Safiedine's Brief in Reply, for example, cites authority from the Second Circuit holding that tax loss should be adjusted for "'legitimate but unclaimed deductions.'" *United States v. Gordon*, 291 F.3d 181, 187 (2d Cir. 2002) (quoting *United States v. Martinez-Rios*, 143 F.3d 662, 671 (2d Cir. 1998)). Several other circuits, however, disagree. *See, e.g.*, *United States v. Clarke*, 562 F.3d 1158, 1164 (11th Cir. 2009); *United States v. Blevins*, 542 F.3d 1200, 1203 (8th Cir. 2008); *United States v. Delfino*, 510 F.3d 468, 472 (4th Cir. 2007); *United States v. Phelps*, 478 F.3d 680, 681-82 (5th Cir. 2007) (per curiam); *United States v. Chavin*, 316 F.3d 666, 677 (7th Cir. 2002).

*States v. Yip*, 592 F.3d 1035, 1041 (9th Cir. 2010).  However, it "does not require a court to speculate about tax deductions that the taxpayer chose not to claim."  *Id.*; *United States v. Delfino*, 510 F.3d 468, 472-73 (explaining that district courts are not required to "consider the many 'hypothetical ways' that [defendants] could have completed their tax returns" and indicating that defendants are not entitled to the benefit of deductions that they might have claimed).

To illustrate the speculative nature of such a post-hoc assessment, the Government points out that many of the deductions Mr. Washenko argues the Court should have applied "are for depreciation of assets owned by [D]efendant [S]afiedine's other entities. [However, a]t no time in the past 30 years [has Defendant's] accountant [] ever put the depreciation of a separate entity's assets on the books and records of JSC Corporation." (Gov't.'s Br. in Resp. to Defs.' Mots. for Bond 7-8.)  While "[a] defendant may well be able to persuade a court that, given his tax-filing practice, he would have claimed deductions on the unreported income[,]" Defendants have not presented sufficient evidence that the deductions would have been claimed here.  *United States v. Hoskins*, 654 F.3d 1086, 1096 (10th Cir. 2011).

The example above illustrates that the amount of tax loss in the instant case is uncertain at best, and the Court does not believe the guidelines require it to engage in the "nebulous and potentially complex exercise of speculating about [the merits of] unclaimed deductions."  *Yip*, 592 F.3d at 1041.  When the amount of tax loss is uncertain "the guidelines contemplate that the court will simply make a *reasonable estimate* based on the available facts."  U.S. Sentencing Guidelines Manual § 2T1.1 cmt. n.1 (emphasis

11

added).  In making this "reasonable estimate," the Sixth Circuit has explained, "the district court is to" assess "the amount of loss that [D]efendant[s] intended to inflict, not the actual amount of the [G]overnment's loss." *Kraig*, 99 F.3d at 1370-71.  One way of determining such intended loss – that is, "the loss that was the object of the offense[,]" U.S. Sentencing Guidelines Manual § 2T1.1(c) – is to look at the "amount by which [a defendant] underreported and fraudulently stated his tax liability on his return." *United States v. Chavin*, 316 F.3d 666, 677 (7th Cir. 2002).

In the instant case, the Court determined that the available facts supported a tax loss calculation of $193,200.  In reaching this amount, the Court found that Defendants intended to conceal the true amount of JSC's taxable income by failing to report $565,000 in Sunoco checks and understating the sale price from the gas station on MTK & KLC's tax returns by $175,000.  (Sent'g Hrg. Tr. 116:5-19, 118:7-13.) These figures were supported by the testimony at trial.

Allan Cohen, the accountant who prepared JSC's tax returns, testified that he would obtain the business's revenue figures based on reconciliations of JSC's bank statements and meetings with Defendants.  (Trial Tr. vol. 3, 85-88.)  Mr. Cohen further testified that he was unaware of any checks that were negotiated to third parties when he prepared JSC's tax returns. (*Id.*, 96-102.)  Thus, Mr. Cohen was never made aware of five checks from Sunoco to JSC totaling $565,000, as these checks were never deposited into JSC's bank accounts nor were they otherwise reported to Mr. Cohen by Defendants.  (*Id.*, 97-102.)  Without having knowledge of the income, Mr. Cohen could not include it in JSC's tax return.  The tax loss on the $565,000, calculated by applying the default 28%

tax rate, is $158,200.  The Court further determined that Defendants negotiated these checks to third parties in order to escape detection by taxing authorities.

With respect to the sale of the gas station, the Government elicited testimony from two witnesses supporting the contention that the gas station was sold for $875,000 and not the $700,000 reported to the IRS.  (Trial Tr. vol. 1, 51; *id.* vol. 3, 12.)  Defendants' expert Mr. Washenko opines that the sale price was approximately $725,000.  (Washenko Report, Exhibits Expanding Record at Sent'g, ECF No. 90-3, 5.)  While the amount of funds ultimately received from the gas station transaction appears disputed, the dispute does not affect the proper guidelines range.  Assuming, for sake of argument, that Defendants are correct, the tax loss on the $25,000 that was not reported would be $5,000.[7]  This would reduce the total tax loss to $163,200, which does not impact the advisory guidelines range.  U.S. Sentencing Guidelines Manual § 2T4.1 (Tax Table).  In fact, the tax loss from the negotiated Sunoco checks alone justifies imposition of the sentences both Defendants received.  (*Id.*)

Defendants do not argue that their appeals raise "substantial question[s] of law or fact likely to result in . . . a sentence that does not include a term of imprisonment," 18 U.S.C. § 3143(b)(1)(B)(iii), nor could they given that they argue for a guidelines range of 6-12 months.  They do, however, argue that the appeals process will take longer than the maximum term of this 6-12 month advisory guideline range and that they are entitled to bond pending appeal on this ground pursuant to 18 U.S.C. § 3143(b)(1)(B)(iv). However, as discussed above, the Court does not believe that Defendants have raised a

---

[7] Applying the 1999 capital gains tax rate of 20%.

substantial question with regard to the proper measure of tax loss for sentencing purposes. The majority of circuits addressing the question have determined that intended loss is the proper measure of tax loss and that district courts need not give defendants the benefit of unclaimed deductions. *See* n.6, *supra*. While the Government did not counter the testimony of Defendants' expert at sentencing, it was not required to do so.

In concluding that sentence was properly calculated, the Court notes its agreement with the observation made by the Tenth Circuit when it explained that it did not interpret the guidelines "as giving taxpayers a second opportunity to claim deductions after having been convicted of tax fraud." *United States v. Spencer*, 178 F.3d 1365, 1368 (10th Cir. 1999). Rather, like the *Spencer* Court, this Court is "merely assessing the tax loss resulting from the manner in which the defendant chose to complete his income tax returns." *Id.* The Court reiterates that actual loss is not determinative for purposes of calculating the sentencing range. As such, the Court finds that Defendants have not satisfied the standard for remaining on bond pending appeal.

**B.     Likelihood of an Order for a New Trial**

Defendants also have not established the existence of "a substantial question of law or fact likely to result in . . . reversal[ or] an order for a new trial." 18 U.S.C. § 3143(b)(1)(B)(i)-(ii). Defendants argue that the unrebutted evidence at the sentencing hearing established a negligible tax loss. This evidence, they argue, undercuts a necessary element of the offense of conviction, namely, that Defendants intended to defraud the United States by concealing income from the IRS. (Def. Safiedine's Br. in Supp. 14; Def. Fawaz's Br. in Reply 7-8.) The Court rejects this argument.

Although Defendants argue that trial counsel's decision not to put Mr. Washenko on the stand at trial "deprived the jury of the balanced analysis of the evidence that he provided and left the Government's rough and crude calculation unrebutted[,]" (Def. Safiedine's Br. in Supp. 14) the crime Defendants were convicted of does not require the Government to prove a tax loss. This Court has previously considered whether to grant Defendants' motions for acquittal, or in the alternative, their motions for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33 (June 7, 2012 Opinion & Order (denying Rule 29 and Rule 33 motions); July 19, 2012 Opinion & Order (denying motion for reconsideration of June 7, 2012 ruling).) In denying these motions, this Court determined that the record contained sufficient evidence to support the guilty verdict and that the jury's verdict was not against the manifest weight of the evidence. (June 7, 2012 Opinion & Order 12.) The evidence presented at sentencing does not persuade the Court differently.

## IV. CONCLUSION AND ORDER

On the basis of the foregoing discussion, the Court concludes that neither Defendant has overcome the presumption of incarceration embodied in the Bail Reform Act.

Accordingly,

**IT IS ORDERED THAT,** Defendant Safiedine's Motion for Bond Pending Appeal is **DENIED**;

**IT IS FURTHER ORDERED THAT,** Defendant Fawaz's Motion for Bond Pending Appeal is **DENIED**.

Dated: December 27, 2012

                                              s/PATRICK J. DUGGAN
                                              UNITED STATES DISTRICT JUDGE

Copies to:
**James C. Thomas, Esq.**
**Sabrina Shaheen Cronin, Esq.**
**Tiwana L Wright, Esq.**